**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | **CIVIL NO. 20-248 (DRD)** |
| v. | |
| **[1] MARÍA MILAGROS CHARBONIER-LAUREANO,**<br>**[2] FRANCES ACEVEDO-CEBALLOS,**<br>**[3] ORLANDO MONTES-RIVERA,**<br>**[4] ORLANDO GABRIEL MONTES-CHARBONIER,** | |
| *Defendants.* | |

**OPINION AND ORDER**

Pending before the Court is Codefendant, María Milagros Charbonier-Laureano's *Motion to Dismiss Counts Two and Three (Section 666 Counts)*. *See* Docket No. 81.[1] Codefendants, Orlando Montes-Charbonier, Orlando Montes-Rivera and Frances Acevedo-Ceballos also filed requests for dismissal. *See* Docket Nos. 85, 87 and 89, respectively. The Government filed a *Response in Opposition* thereto. *See* Docket No. 86. Thereafter, Charbonier-Laureano filed a *Reply*. *See* Docket No. 101.

For the reasons stated herein, the Court hereby **DENIES** the Defendants' requests for dismissal. *See* Docket Nos. 81, 85, 87 and 89.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On August 7, 2020, a Grand Jury returned an *Indictment* against the Defendants for the following violations: knowingly and willfully conspir[ing] and agree[ing] together and with each

---

[1] All Codefendants filed motions for joinder as to Charbonier-Laureano's request for dismissal. *See* Docket Nos. 85, 87 and 89.

other, and with other persons both known and unknown to the Grand Jury to commit the following offenses against the United States: (a) theft concerning programs receiving federal funds; (b) bribery and kickbacks concerning programs receiving federal funds as to Codefendants, María Milagros Charbonier-Laureano (hereinafter, "Charbonier-Laureano"), Orlando Montes-Rivera (hereinafter, "Montes-Rivera") and Orlando Montes-Charbonier (hereinafter, "Montes-Charbonier"); (c) bribery and kickbacks concerning programs receiving federal funds as to Codefendant, Frances Acevedo-Ceballos (hereinafter, "Acevedo-Ceballos"); and (d) honest services fraud in violation of 18 U.S.C. § 371 (hereinafter, "Count One"); for federal funds theft as to all Defendants in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2 (hereinafter, "Count Two"); federal funds bribery and kickbacks as to Codefendants, Charbonier-Laureano, Montes-Rivera and Montes-Charbonier in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2 (hereinafter, "Count Three"); federal funds bribery and kickbacks as to Codefendant, Acevedo-Ceballos in violation of 18 U.S.C. §§ 666(a)(2) and 2 (hereinafter, "Count Four"); honest services wired fraud as to all Defendants in violation to 18 U.S.C. §§ 1343 and 1346 (hereinafter, "Counts Five through Ten"); and money laundering as to Codefendants, Charbonier-Laureano, Montes-Rivera and Montes-Charbonier, in violation to 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (hereinafter, "Counts Eleven and Twelve"); and obstruction of justice as to Codefendant, Charbonier Laureano in violation to 18 U.S.C. § 1519. *See Indictment*, Docket No. 2.

On February 17, 2021, Charbonier-Laureano filed a *Motion to Dismiss Counts Two and Three (Section 666 Counts)* (Docket No. 81) essentially arguing that § 666 of the U.S. Code does not extend to all purported bribery acts, irrespective of whether the government unit involved had a federal program or received federal funds. According to Charbonier-Laureano, "[t]he

alleged bribe must involve an agent of an organization, government, or agency that received more than $10,000 in federal benefits. Because the [Puerto Rico House of Representatives], which is the governmental unit at issue, received no federal funding or benefits during the time charged in the Indictment (2017-2020), the jurisdiction threshold is not met in Mrs. Charbonier's case." Docket No. 81 at 2.

It is further argued that the Government's theory is based on an incorrect interpretation of *United States v. Bravo-Fernández*, 722 F.3d 1 (1st Cir. 2013) (hereinafter, "*Bravo-Fernandez I*"), wherein the First Circuit concluded that under certain circumstances, a legislator may be considered an "agent" of the Commonwealth of Puerto Rico under § 666. *See* Docket No. 81 at 3. According to Charbonier-Laureano, *Bravo-Fernández I* did not enter into "whether merely alleging that a state or territory received $10,000 in benefits from the federal government satisfies Section 666['s] jurisdictional threshold" as "the legislator charged was a senator and the government introduced evidence that the Puerto Rico Senate, the unit at issue in that case, received more than $10,000 in federal funds." *Id.* at 3. Instead, the case at bar revolves around the fact that "[i]n each of the calendar years 2017, 2018, 2019, and 2020, the Commonwealth of Puerto Rico received in excess of $10,000 from the United States government under federal programs involving grants, subsidies, loans, guarantees, insurance, and other forms of assistance," (Docket No. 2, at ¶ 50) and not on the fact that it is the Puerto Rico House of Representatives the agency where Charbonier-Laureano's alleged proscribed conduct occurred and not the Commonwealth of Puerto Rico as a whole.  To that end, Charbonier-Laureano argues that "[t]he Indictment fails to allege a specific Federal Program [required element of the offense] because there is none – as it related to the PR House" not the Commonwealth of Puerto Rico, as

the Government attempts to demonstrate. *Id.* at 15. Accordingly, without reference to a specific federal program, the jurisdictional threshold required pursuant to § 666 fails.

On another note, Charbonier-Laureano argues that "this Court should dismiss the Section 666 counts because the alleged violations are barred by the bona fide salary exception. 18 U.S.C. § 666(c)." Docket No. 81 at 20. According to Charbonier-Laureano, "[Codefendant] Acevedo was paid a salary for the legitimate work she performed," hence, it is uncontroverted that [Codefendant] Acevedo "earned [her salary] in good faith for work done for the employer." *See id.* (citing *U.S. v. George,* 841 F.3d, 55 62 (1st Cir. 2016)).

In turn, the Government argues that the Defendant's argument "is directly and unambiguously foreclosed by *Bravo-Fernández I*, 722 F.3d at 8-9, which held that Puerto Rico legislators are agents of the Commonwealth." Docket No. 86 at 1. The Defendants' alternative argument that said case law "was erroneously decided, has been overruled, or has been augmented by additional extra-textual requirements," is unfounded. *See id*. Contrary to the argument raised by Charbonier-Laureano, "*Bravo-Fernández II* did not annul, erode, or cast any doubt on the *Bravo-Fernandez I* holding that Puerto Rico legislators are 'agents' of the Commonwealth under § 666," rather, "'the entity [the senator] represented as an agent' was 'the Commonwealth of Puerto Rico.'" *Id.* (citing *United States v. Bravo-Fernandez*, 913 F.3d 244, 246 (1st Cir. 2019)) (hereinafter, *Bravo-Fernandez II*). Furthermore, the Government sustains that the "Defendant's argument that the government must identify in the Indictment a particular federal program within the meaning of 18 U.S.C. § 666(b) lacks any support in the case law, which instead categorically provides otherwise." *Id.* Finally, contrary to Charbonier-Laureano's argument, the Government asserts that "a fraudulently inflated salary cannot be 'bona fide.'" *Id.* at 12.

4

However, a proper analysis of the parties' motions requires careful scrutiny of the underlying legal framework.

## II.   RELEVANT COUNTS

The instant controversy pertains to Counts Two and Three of the *Indictment*. *See* Docket No. 2. Count Two charges Charbonier-Laureano for "being an agent of the Commonwealth of Puerto Rico [who] fraudulently obtained money from the PR Commonwealth by unlawfully inflating [Codefendant] Acevedo's government salary and retaining the inflated portion of that salary for the defendants' own use and benefit" in violation to 18 U.S.C. § 666(a)(1)(A). *Id.*, at ¶ 52.

Whereas, Count Three charges Charbonier-Laureano for "corruptly soliciting and demanding for her own benefit and accepting and agreeing to accept things of value [from] defendant Acevedo, that is Acevedo's alleged inflated salary," in violation to 18 U.S.C. §§ 666(a)(1)(B) and 2. Docket No. 81 at 5; *see also* Docket No. 2, at ¶ 56.

In both Counts, the Government alleges that "[i]n each of the calendar years 2017, 2018, 2019, and 2020, the Commonwealth of Puerto Rico received in excess of $10,000.00 from the United States government under federal programs involving grants, subsidies, loans, guarantees, insurance, and other forms of assistance." at ¶¶ 50, 54.

## III.   LEGAL STANDARD

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. Honoring this sacred provision, the Federal Rules of Criminal Procedure state that "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Fed. R.

Crim. P. 7(c)(1). Compliance with these fundamental provisions requires that "[a]n indictment ... set forth each element of the crime that it charges." *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007).

Federal Rule of Criminal Procedure 12(b)(1) allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine **without a trial on the merits**." (emphasis added). A motion to dismiss an indictment, either entirely or partially, "must be raised by pretrial motion **if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits**." (emphasis added). Fed. R. Crim. P. 12(b)(3)(B)(v).

When evaluating a motion to dismiss an indictment or its counts, "[i]t should not be necessary to mention the familiar rule that, at this stage of the case, the allegations of the indictment must be taken as true." *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16 (1951); *see also* 1A Wright, Liepold, Henning & Welling, Federal Practice and Procedure § 194, (4th ed., April 2015 Supplement)(collecting cases). Further, "[w]hen reviewing a pleading for sufficiency, courts should consider the indictment in its entirety, . . . and should be guided by common sense and by practical rather than by technical considerations." 1 Wright, Liepold, Henning & Welling, Federal Practice and Procedure § 125, (4th ed., April 2015 Supplement) (collecting cases). Therefore, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as those words set forth all the elements of the offense without any uncertainty or ambiguity." *United States v. Brown*, 295 F.3d 152, 154 (1st Cir. 2002) (internal quotation marks and citation omitted).

## IV.     LEGAL ANALYSIS

### A.  *Is Defendant Charbonier-Laureano an Agent of the Commonwealth of Puerto Rico?*

Pursuant to § 666, the Government must establish that the person involved in the theft or bribery concerning programs receiving federal funds, is "an agent of an organization, or of a State, local or Indian tribal government, or any agency thereof." 18 U.S.C. §§ 666(a)(1), (a)(2). Said statute defines the term "agent" as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager and representative." *Id.* § 666(d)(1). In turn, the term "government agency" is defined as "a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for execution of a governmental or intergovernmental program." *Id.* § 666(d)(2). The Court must determine whether a legislator is "an agent of . . . a State . . . government" as defined by § 666. The Court finds that Charbonier-Laureano is an "agent" of a "state" and "government" and proceeds to explain.

In *Bravo-Fernández I*, the First Circuit dealt with a bribery between a businessman and a Puerto Rico Senator, who unsuccessfully argued that a senator is not an agent of the Commonwealth of Puerto Rico. *See Bravo-Fernández I* at 8-9. Said forum "reject[ed] any notion that state legislators are categorically exempt from prosecution under § 666." *Id.* at 8. In fact, according to the First Circuit, "the plain language of the statute includes a 'representative' of a 'government' in the list of positions that fall under the statute's definition of 'agent,' 18 U.S.C.

§ 666(d)(1), and <u>there is no more classic government 'representative' than a legislative branch</u> <u>officer</u>." *Id.* (Emphasis ours). Therefore, the Court finds evident that "Congress clearly sought to apply § 666 to legislative-branch officials." *United States v. Lipscomb*, 299 F.3d 303, 333 (5th Cir. 2002). For instance, the Fifth Circuit found that "Lipscomb is an 'agent' under the statute because he is an 'officer' of Dallas. 18 U.S.C. § 666(d)(1) (2000). Even if he were merely an agent of a 'subdivision of the [ ] legislative ... branch of government,' the statute's text would still cover him." 18 U.S.C. § 666(d)(2)(2000). *Id.* at fn. 155.

It was further argued in *Bravo-Fernández I,* that the Defendant "may only be appropriately classified as a representative (and thus an agent) of the Puerto Rico Senate, and not—as the indictment alleged—of the Commonwealth as a whole." *Id.* at 9. Said argument was rejected by the First Circuit as follows:

> Once again we need go no further than the plain language of the statute to conclude that [the senator] may be properly considered "agent[]" of the Commonwealth of Puerto Rico. Among the five types of entities for which one may be an agent within the meaning of § 666 is a state government. See 18 U.S.C. § 666(a)(1), (2) (referring to "an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof"). The Puerto Rico Senate is a constituent part of the Commonwealth government, created by the Puerto Rico Constitution. *See* P.R. Const. art. III, § 1. Its members are thus part of the limited category of government officials who represent the "State" as a whole, unlike employees of localities or of agencies at every level of government. As such, they easily fall within the concept of "an agent of . . . a State . . . government." [The senator] [was] thus properly considered [an] agent[] of the Commonwealth of Puerto Rico under § 666.

*Id.* As there is no additional case law regarding this issue in the First Circuit, this Court further found that § 666 is similarly applied in Sister Circuit Courts. Namely, in *United States v. Willis*, 844 F.3d 155, 159, 167 (3d Cir. 2016), the Third Circuit found that the legislature of the Virgin Islands was a government agency covered under the federal programs' bribery statute, hence, the

executive director of said legislator was considered an agent of the government, as required to support his conviction under § 666. Similarly, the Fifth Circuit has found that "Congress clearly sought to apply § 666 to legislative-branch officials." *Lipscomb*, 299 F.3d at 333. In turn, the District Court of Columbia "acknowledge[d] that a legislator who misuses his legislative authority to facilitate corrupt practices affecting agency programs that receive federal funds may well fall within the ambit of § 666. Under those circumstances, the legislator would be engaging in corrupt acts at the governmental level, not with respect to funds that have been allocated to a specific agency. Applying § 666 to such conduct would be consistent with the broad 'corruption focus' that courts have taken with respect to the statute." *United States v. Sunia*, 643 F.Supp. 2d 51, 67 (D.D.C. 2009). Whereas, the District Court of Alabama found that "[s]tate legislators are 'authorized to act on behalf of . . . a government.'" *United States v. McGregor*, No. 10-CR-186, 2011 WL 1562882 at *3 (M.D. Ala. Apr. 4, 2011).

Charbonier-Laureano argues that she is not an agent of the Commonwealth of Puerto Rico for purposes of § 666 as "*Bravo-Fernández I*'s interpretation of the 'agent' element is based on an expansive reading of Section 666. After *Bravo-Fernández I*, however, the Supreme Court decided the contrary (statutes are not to be interpreted expansively)." Docket No. 81 at 11. Meanwhile, the Government argues that "[j]ust as Puerto Rico senators are 'agents' of the Commonwealth for purposes of § 666, so too are Puerto Rico representatives (particularly at-large representatives like Defendant whose constituency is literally the entire Commonwealth)." Docket No. 86 at 7. According to the Government, "the very Puerto Rico constitutional clause cited in *Bravo-Fernandez* treats identically the state Senate and House." *Id.*; *see also* P.R. Const. art. III, § 1 ("The legislative power shall be vested in a Legislative Assembly, which shall consist of

two houses, the Senate and the House of Representatives whose members shall be elected by direct vote at each general election.").

Considering that the purpose of § 666 is the protection of federal funds, if Charbonier-Laureano is not found to be an agent of the Commonwealth, the funds granted to the Commonwealth, would be insufficient to satisfy the requirements set forth by § 666(b). In fact, the statute cannot reach any government employee who misappropriates purely local funds, without regard to how organizationally removed the employee is from the particular agency that administers the federal program. *See United States v. Phillips*, 219 F.3d 404, 411 (5th Cir. 2000). This doctrine applies even if the House of Representatives as a subsection of the Commonwealth does not receive benefits directly or as an assignee under a federal program. Essentially, a determination as to whether Charbonier-Laureano is an "agent" of the Commonwealth precedes a determination as to whether the money allocated to the Commonwealth of Puerto Rico is applicable to her as a legislator.

Upon consideration of the parties' positions, the Court must conclude that Charbonier-Laureano falls within the scope of the definition of "agent" pursuant to § 666. Particularly, Charbonier-Laureano was an at-large member of the Puerto Rico House of Representatives, who was selected by direct vote of all electors registered to vote in Puerto Rico. Notably, Charbonier-Laureano was the at-large member of the Puerto Rico House of Representatives who received the highest number of votes in the 2016 General Election between all fourteen (14) candidates.[2]

---

[2] The Court takes judicial notice of the fact that Charbonier-Laureano received 136,905 votes, to wit, 9.43% of the votes registered for the position of Legislator at-large in said election according to the State Election Commission of Puerto Rico. *See* Elecciones Generales 2016 Escrutinio, Comisión Estatal de Elecciones, July 15, 2021, 1:56 p.m., http://elecciones2016.ceepur.org/Escrutinio_General_77/index.html#es/pic_bar_list/REPRESENTANTES_POR_ACU MULACION_Resumen.xml.

Furthermore, the definition of "agent" in § 666 clearly includes a legislator as an agent of the Commonwealth. Stating otherwise transgresses the purpose of Congress when enacting § 666 as interpreted by several circuits.

1. <u>Does a narrower construction of the term "agent" for purposes of § 666 need to be applied as opposed to the broad construction provided by *Bravo-Fernández I*?</u>

Article III, Section I of the Constitution of the Commonwealth of Puerto Rico (hereinafter, "PR Constitution") provides that "[t]he legislative power shall be vested in a Legislative Assembly, which shall consist of two houses, the Senate and the House of Representatives, whose members shall be elected by direct vote at each general election." P.R. Const. art. III, § 1. The PR Constitution further provides that "[t]he Senate shall be composed of twenty-seven Senators and the House of Representatives of fifty-one Representatives, except as these numbers may be increased in accordance with the provisions of Section 7 of this Article." P.R. Const. art. III, § 2. Specifically, the PR Constitution provides Puerto Rico Legislature, Senate and House of Representatives, with the power of redacting and approving bills. Among those bills, is "[t]he general appropriation act which shall contain only appropriations and rules for their disbursement." P.R. Const. art. III, § 17. Particularly, "[a]ll bills for raising revenue shall originate in the House of Representatives, but the Senate may propose or concur with amendments as on other bills." *See id.*

Accordingly, the Court finds that the First Circuit's determination that senators could be considered "agents" of the Puerto Rico Commonwealth for purposes of § 666 because the

"Puerto Rico Senate is a constituent[3] part of the Commonwealth government, created by the Puerto Rico Constitution," is equally applicable to a legislator from the Puerto Rico House of Representatives. Essentially, a representative is a constituent part of the Commonwealth government, also created by the PR Constitution, but both houses are responsible for the *sine qua non* requirement of redacting and approving the general appropriations bill that is submitted to the Governor and Financial Oversight and Management Board of Puerto Rico with specifications as to appropriations and rules of disbursement.

Among the appropriations that are proposed and approved by both houses are the budgets that are to be assigned to each member of the Puerto Rico House of Representatives as well as each member of the Puerto Rico Senate. Therefore, the Court deems that Charbonier-Laureano, as a legislator at-large, played an important role in the submission and approval of the general appropriations bill which included her office's own budget. As rightly explained by the Codefendant, in order for the Government to rely on § 666, "a public corruption statute, to charge an elected public official with fraud, then it must base those charges on the elected official's actions as a legislator." Docket No. 101 at 5; *see Bravo-Fernández I*, 722 F.3d at 14. Codefendant Acevedo-Ceballos' salary was determined precisely with part of the budget that was assigned to Charbonier-Laureano by legislation. Ultimately, pursuant to the *Indictment*, said salary was inflated in order to divert salary funds for Charbonier-Laureano's personal use.

However, it is Defendant's position that *Bravo-Fernández I* "did not determine that the jurisdictional threshold is satisfied if the PR Commonwealth, as whole, received $10,000 or more

---

[3] Constituent, n. (17c) 1. Someone who gives another the authority to act as a representative; a principal who appoints an agent. 2. Someone who is represented by a legislator or other elected official. 3. One part of something that makes up a whole; an element. *Garner*, Black's Law Dictionary, (10th ed. 2014).

in federal funds." Docket No. 81 at 11. Notwithstanding, Charbonier-Laureano does concede that the First Circuit found that senators could be considered "agents" for purposes of § 666. Notwithstanding, she argues that the interpretation of "agent" in *Bravo-Fernández I* "is based on an expansive reading of Section 666." *Id.*

In support thereof, Charbonier-Laureano submits that after *Bravo-Fernández I*, the Supreme Court decided that statutes are not to be interpreted expansively. In support thereof, she claims that *U.S. v. McDonnell*, 136 S.Ct. 2355, 2373 (2016) found that "a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to the latter." It is further argued that the narrow construction disposed by the Supreme Court "coupled with the presumption the Supreme Court required in *Bond v. United States*, 134 S. Ct. 2077 (2014), [] requires a 'clear statement' before federal criminal statutes displace the exclusive authority of state law." Docket No. 81 at 12. Therefore, Charbonier-Laureano contends that since *Bond*, *id.*, was decided one year after *Bravo-Fernández I*, the "Bond presumption" was not applied to § 666 cases. "Had it done so, a narrower interpretation was warranted when analyzing whether senators were agents of the Commonwealth under Section 666, rather than an interpretation that expanded federal jurisdiction over state offenses." *Id.*

Whereas, the Government argues that neither case law has a bearing here as they are clearly distinguishable from the case at bar. Specifically, the Government relies on *Salinas v. United States*, 118 S.Ct. 469, 473, 522 U.S. 52, 57 (1997), where the Supreme Court held that "the broad definition of the 'circumstances' to which the statute applies provides no textual basis for limiting the reach of the bribery prohibition. The statute applies to all cases in which an 'organization, government, or agency' receives the statutory amount of benefits under a federal

program. § 666(b)." In further support thereof, the Government relies on the case of *United States v. Sotomayor-Vazquez*, 249 F.3d 1, 8-9, wherein the First Circuit described the Supreme Court's expansive approach to the applicability of § 666 by finding that even "an <u>outside consultant</u> with significant managerial responsibility may pose as significant a threat to the integrity of federal funds as a manager actually employed by the agency in question." (Emphasis ours). In further support thereof, the Government provides the Court with two decisions from other circuits which have held that the *McDonnell*, *supra*, decision is not applicable to § 666. For instance, the Fifth Circuit held that,

> [t]he decision in McDonnell did not address § 666 and interpreted a component of a materially different crime. 136 S. Ct. at 2365-75. Moreover, a bribery offense under § 666 is not restricted to "official acts," as defined in § 201(a)(3) and interpreted by McDonnell, and broadly bars corruptly soliciting or accepting a thing of value in exchange for influence or reward in connection with any business, transaction, or series of transactions. § 666(a)(1)(B) & § 666(b).

*Winfield v. United States Prob. & Pretrial Servs.*, 810 F. App'x 343, 344 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1076, 208 L. Ed. 2d 535 (2021). In turn, the Second Circuit, while addressing whether some jury instructions were flawed in a case relating to Hobbs Act extortion in violation to 18 U.S.C. § 201 and § 666, found that "[section § 666], is more expansive than § 201," as "[s]ection 666 prohibits individuals from 'solicit[ing] ... anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of [an] organization, government, or agency.' We do not see that the *McDonnell* standard applied to these counts." *United States v. Boyland*, 862 F.3d 279, 291 (2d Cir. 2017)[4]. The Court notes that *McDonnell* was related to a violation of an "official act" for purposes of the federal bribery

---

[4] "[Counts] Four, Seventeen, and Nineteen, alleging bribery and bribery conspiracy with respect to the carnival and real estate schemes, in violation of 18 U.S.C. § 666. *Boyland, Id.*

14

statute under § 201. The Supreme Court does not extend its applicability to § 666 and the Defendant has failed to submit case law that would suggest otherwise.

Therefore, the Court deems correct the Government's position and briefly explains. As previously discussed in detail, Charbonier-Laureano was a representative at-large of the Puerto Rico House of Representatives. Being an at-large member of the Puerto Rico House of Representatives requires receiving votes from all citizens of the Commonwealth of Puerto Rico. In fact, as previously noted, Charbonier-Laureano was the candidate who received the highest number of votes in the 2016 General Election between all fourteen (14) candidates for the same position. *See supra* note 2, p. 10. The Court further adds that there is nothing in the PR Constitution that suggests that the Senate represents the government while the House of Representatives does not. The Puerto Rico House of Representatives is "a constituent part of the Commonwealth government" just as the First Circuit found the Senate to be. That is precisely the reason for the First Circuit's finding that senators are "part of the limited category of government officials who represent the 'State' as a whole, unlike employee of localities or agencies at every level." *Bravo-Fernández I*, 722 F.3d at 9.

More significantly, there is no case law which supports Charbonier-Laureano's contention that a narrower construction of the word "agent" should be applied herein. Without citing cases in support of her argument, the Court rejects Charbonier-Laureano's interpretation as insufficient and therefore, must be **DENIED.**

With this hurdle surmounted, the Court must now determine whether a specific federal program that received benefits in excess of $10,000.00 in federal assistance within the House of

Representatives must be identified as a requirement for § 666 to be applicable to legislators. The Court deems that it is not required and explains.

### B. Does the Government Need to Identify a Specific Federal Program that Receives Federal Benefits within the House of Representatives for § 666 to be Applicable?

18 U.S.C. § 666(b) reads as follows: "[t]he circumstances referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one-year period, benefits in excess of $10,000.00 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."

As such, § 666(b) is the *sine qua non* requirement. Said statute provides that the party in question must have a relationship with an entity, "organization, government or agency" that received $10,000.00 under a federal program in some form of federal assistance. This requirement mandates the juridical element necessary for charges pursuant to § 666.

First, in order to determine whether an organization participating in a federal assistance program received benefits, an examination of the program's structure, operation and purpose must be performed. *See United States v. Fisher*, 529 U.S. 667, 679 (2000). Whenever the funds qualify pursuant to § 666(b), it makes no difference whether the entity received the funds directly or indirectly. *See Bravo-Fernández II*, 913 F.3d at 249.

In fact, the meaning of benefits pursuant to § 666 is not limited to primary target recipients or beneficiaries. *Id.* As such, the criminal conduct by the party in question is not required to be within the funds allocated by the federal program to the governmental entity. To that end, the Supreme Court held that the required nexus is not between the criminal conduct and the federal funding. *See Salinas,* 118 S.Ct. at 471. Although, "[a]n agent violates subsection b when he engages in the prohibited conduct . . . Subsection b contains nothing to indicate that

'any transaction involving $5,000 means 'any federally funded transaction involving $5,000' or 'any transaction involving $5,000 of federal funds'[.]" *Lipscomb*, 299 F.3d at 333. *See also Bravo-Fernández I*, 722 F.3d at 11 (holding that "[t]he authority to allocate federal funds is not, however, an element of section 666").

Therefore, the statutory text does not require that the person be authorized to act specifically with respect to the entity's funds. *United States v. Keen*, 676 F.3d 981, 989-90 (11th Cir. 2012). Instead, it requires that the individual has the authority to "act on behalf of another person or the government." 18 U.S.C. § 666(d)(1)(emphasis ours); *see also Bravo-Fernández I*, 722 F.3d at 9. In fact, "[t]he expansive statutory definition [in § 666(d)(1)] recognizes that an individual can affect agency funds despite a lack of power to authorize their direct disbursement." *Phillips*, 219 F.3d at 411. Therefore, to broadly protect the integrity of federal funds given to an agency, § 666 applies to any individual who represents the agency in any way, as representing or acting on behalf of an agency, that can affect its funds even if the action does not directly involve financial disbursement. *See Bravo-Fernández I*, 722 F.3d at 11 (quoting *Phillips*, 219 F.3d at 422).

Accordingly, the essential nexus is not between the funding and conduct, rather, the connection must be drawn between the criminal conduct and the organization, government, or agency receiving the federal funding. *Phillips*, 219 F.3d at 413. "[A]lthough the conduct prohibited by section 666 need not actually affect the federal funds received by the agency, there must be some nexus between the criminal conduct and the agency receiving federal assistance." *Id.* at 413-14.

17

Notwithstanding, despite that the action need not involve federal funds, one cannot say that the statute can reach any employee that misappropriates exclusively local funds, without any regard to just how removed the employee is from the agency or entity that administers the federal program. *Id.* at 411. There is an amount of separation from the entity that administers the federal program and the criminal conduct that would invalidate subsection b. This matter reiterates the importance of a nexus between the party's criminal conduct and the agency to satisfy subsection b.

As previously discussed, in order for a person to be charged under § 666, he must be "an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof-... and that the organization, government, or agency received, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee, insurance or other form of Federal assistance." 18 U.S.C. §§ 666(a) and (b). Further, the nexus between the criminal conduct and the entity shall be satisfied by an agency relationship from the party in question to the entity entrusted with the funds. *See Phillips*, 219 F.3d at 411.

Taking into account that the Court finds Charbonier-Laureano to be an agent of the Commonwealth, a local government pursuant to the definition provided by § 666, the benefits received by the Commonwealth from the federal government are sufficient to satisfy § 666(b). Hence, the criminal conduct is not required to have any further connection to the federal funding for the nexus requirement. *See Salinas*, 522 U.S. at 471.

The Court recognizes that Charbonier-Laureano's criminal conduct was not connected to any funding given by the Commonwealth of Puerto Rico, and she did not act with regards to her legislative authority. In support thereof, Charbonier-Laureano produced a *Certification* wherein

18

the Budget and Finance Office of the Puerto Rico House of Representatives certified that "upon conducting an analysis of [their] accounting records, the House of Representatives of Puerto Rico does not receive or distribute federal funds, and has not done so for the past twenty (20) years." Docket No. 81, Exhibit 1.

However, pursuant to *Bravo-Fernandez I*, § 666 is applicable to any individual who represents an agency in any way, as representing or acting on behalf of an agency can affect its funds even if the action does not directly involve financial disbursement to broadly protect the integrity of federal funds provided to an agency. *See Bravo-Fernández I*, 722 F.3d at 11; *Bravo-Fernández II*, 913 F.3d at 244. Accordingly, by having the authority to "act on behalf of . . . [the] government" in a legislative capacity, Charbonier-Laureano meets the criteria for § 666 to apply. Hence, her request for dismissal must be **DENIED**.

### C.   Is the Bona Fide Salary Exception Applicable?

On another note, 18 U.S.C. § 666(c) provides that "[the] section shall not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." Charbonier-Laureano alleges that "[t]he underlying conduct alleged in the Indictment – a purported unlawful raise of Acevedo's salary – falls squarely within Section 666(c)'s safe harbor. As such, it cannot be the basis to allege a Section 666 violation." Docket No. 81 at 17. In response, the Government argues that "a fraudulently inflated salary cannot be 'bona fide.'" Docket No. 86 at 12.

According to the First Circuit, the concept of "'bona fide salary' means salary actually earned in good faith for work done for the employer." *United States v. George*, 841 F.3d 55, 62 (1st Cir. 2016). Yet said concept has been applied by the First Circuit in limited instances. To wit,

in *George*, *id.*, the First Circuit found that a scheme in which employees of a defendant's bus company, which received federal funding, were routinely absent from bus company's premises during their normal working hours and were instead working at the defendant's farm was outside the scope of the bona fide salary exception. The First Circuit also found the bona fide salary exception unapplicable when a defendant created false time sheets on behalf of fellow employees of a government-subsidized career development agency who were in turn paid for hours they never work, due to the fact that the timesheets "were not made in the usual course of business and thus were not bona fide." *United States v. Dwyer*, 238 Fed.Appx. 631, 647-48 (1st Cir. 2007). Whereas, in *United States v. Cornier-Ortiz*, 361 F.3d 29 (1st Cir. 2004), the First Circuit has stated that payments made for what was an underlying legitimate purpose, but intentionally misapplied to undermine a conflict-of-interest prohibition were not within the bona fide salary exception.

There are instances in which a different approach has been taken by other circuits. However, those decisions are based upon facts wholly dissimilar to those herein involved. For instance, in *United States v. Harloff*, 815 F.Supp 618 (W.D.N.Y. 1993), the defendants were charged for falsifying payrolls by claiming to have worked 40-hour weeks when in fact they had worked substantially fewer hours than reported. The Western District of New York found that "[w]hile the exception stated at subsection (c) would not preclude a prosecution involving wages which are clearly not 'bona fide,' its plain language would prevent making a federal crime out of an employee's working fewer hours than he or she is supposed to work . . ." 815 F.Supp. at 619. In another instance, the Sixth Circuit rejected the government's claim that the bona fide salary

exception did not apply in a case related to a sale of deputy sheriffs' jobs in the Shelby County,

Tennessee, Sheriff's Department. Essentially, the Sixth Circuit found that,

> [u]nfortunately for the government, the indictment does not allege that the jobs in question were unnecessary or that the individuals who obtained those employment positions did not responsibly fulfill the duties associated with their employment. In the absence of such allegations, the government has no support for its claims that the salaries paid to the deputy sheriffs were not properly earned "in the usual course of business."

*United States v. Mills*, 140 F.3d 630, 633–34 (6th Cir. 1998). Both decisions are clearly

distinguishable from the case at bar as the instant *Indictment* reads as follows,

> [i]t was the purpose of the conspiracy for CHARBONIER, MONTES, MONTES-CHARBONIER, and ACEVEDO to enrich themselves by embezzling, stealing, obtaining by fraud, and without authority knowingly converting to their use, and intentionally misapplying, property and money that was owned by, or was under the care, custody, and control of the Commonwealth of Puerto Rico, that is, the fraudulently inflated portion of ACEVEDO's government salary.

Docket No. 2 at ¶¶ 21-22. The Government further described how Mrs. Acevedo's "government

salary [was] fraudulently increased from approximately $800 to approximately $2,000 and, later,

by approximately September 2019, to as much as approximately $2,900." *Id.* at ¶¶ 26-27, 30, 52,

56. Additionally, the *Indictment* alleges that "Charbonier specifically agreed to raise Acevedo's

salary, and at all times retained ultimate decision-making authority for all employee salaries in

her office." *Id.* As illustrated by the Government, Charbonier-Laureano and her co-conspirators

"engaged in an ongoing scheme to divert salary funds from a federally funded entity for their

own personal use." Docket No. 86 at 15. *George* precisely rejects this notion as follows:

> In a variation of this theme, the defendant contends that employee salaries cannot be the *res purloined* under section 666 because the statute carves out a safe harbor for 'bona fide salary' payments. 18 U.S.C. § 666(c). But this contention sweeps too broadly and promotes an interpretation of 'bona fide salary' that would swallow the statute in a single gulp. Were this the law, a fraudster would only have to structure his loot as salary to evade prosecution. We hold, consistent

with the plain language and evident purpose of the statute, that 'bona fide salary' means <u>salary actually earned in good faith for work done for the employer</u>.

841 F.3d at 62 (Emphasis ours).

Codefendant Acevedo-Ceballos was Charbonier-Laureano's employee and "worked in Charbonier's office in the House of Representatives or on behalf of a House committee chair by Charbonier since 2013." Docket No. 2 at ¶ 12. Although initially, Acevedo-Ceballos earned a bi-weekly salary of approximately $800.00, her salary was raised on several occasions and by early 2017, her net government salary doubled to over $2,100.00 bi-weekly payments. *See id.*, at ¶ 17. Thereafter, pursuant to the allegations, "[f]rom mid-2017 until in or about July 2020, Acevedo's bi-weekly, net government salary was between $2,700 and $2,900." *Id.*, at ¶ 18. Whereas, Charbonier-Laureano earned a bi-weekly net government salary of $2,500.00, ultimately less than the salary that was being earned by Acevedo-Ceballos as part of the conspiracy. *See id.*, at ¶ 16. It was precisely Charbonier-Laureano's decision in conspiracy with Acevedo-Ceballos, to inflate her salary in order to later obtain kickbacks for her own personal use. It cannot be overlooked that Charbonier-Laureano was the person entitled to distribute her office's budget. The same budget that was redacted and approved by the House of Representatives in which she actively participated as a legislator.

Accordingly, the Court is prevented from interpreting that a salary which was inflated in order to divert salary funds for Charbonier-Laureano's personal use as salary earned in good faith at this time. Notwithstanding, "[w]hether wages were bona fide is a question of fact for the jury." *Dwyer*, 238 F. App'x at 647. Therefore, the Court stops here. It is the jury's function to determine whether the bona fide salary exception applies or not to the defendants when evaluating all the elements of the offense.

### D.  Was Bravo-Fernández I overruled by Bravo-Fernández II?

The Defendant suggests that *Bravo-Fernández I* was overruled by *Bravo-Fernández II* as when "[d]ismissing the language in *Bravo-Fernández I*, the First Circuit explained that the issue of 'whether 'benefits' as used in the statute were received' was never before the *Bravo-Fernández I* court and, thus, 'not dispositive.' In other words, any statement on whether the threshold was met based on the Commonwealth's receipt of funds in excess of $10,000, was, at best, mere *dictum*." Docket No. 81 at 8; *see also Bravo-Fernández II* at 248. However, the Government contends that in *Bravo-Fernández II*, "the defendants had again been convicted of § 666 bribery, but they did not reassert a challenge to the *Bravo-Fernández I's* legal determination that the senator was an 'agent' of the Commonwealth; the defendant senator even conceded that he was an agent of the Commonwealth under the holding of *Bravo-Fernández I*." Docket No. 86 at 7.[5]

Instead, the defendants in *Bravo-Fernández II* focused on demonstrating that the Government failed to establish during the retrial that the Commonwealth had received at least $10,000.00 in federal "benefits" as required for conviction by 18 U.S.C. § 666(b). Therein, the Government relied on "the stipulation entered between the parties [which] made no reference to 'benefits' or, for that matter, to any federal program. The stipulation also did not provide information regarding the intended or actual use of any portion of the $4.7 billion in federal funds. It only provided that the 'Commonwealth of Puerto Rico received over $4.7 billion in

---

[5] For the reader's reference, the defendant senator, in his appellate brief related to *Bravo-Fernández I*, "acknowledge[s] that [the First Circuit] has rejected the arguments contained here [as to whether the Government's section 666 charge is flawed], in the direct appeal from the first trial." *United States v. Bravo-Fernández* (No. 18-1370), 2018 WL 3005366, at *18.

federal funds' during the relevant time period." *Bravo-Fernandez II*, 913 F.3d at 251. The First Circuit ultimately found said stipulation insufficient to meet the burden required by § 666(b).

The Court deems evident that the First Circuit's focus on *Bravo-Fernández II* was to determine whether "the entity (a Puerto Rico senator) represent[ing] as an agent, the Commonwealth of Puerto Rico, received at least $10,000 in federal 'benefits' within the meaning of the statute," not if the senator was considered an agent of the Commonwealth. *Id.* at 246. The First Circuit had already determined that the senator was an agent of the Commonwealth in *Bravo-Fernández I.* Therefore, the fact that the senator was an agent was not in dispute, thus, not overruled by *Bravo-Fernández II*. A accordingly, Charbonier-Laureano's argument is unfounded.

### E. Is a dismissal as to Counts One, Eleven and Twelve warranted as to Codefendants, Montes-Rivera and Montes-Charbonier?

Codefendants Montes-Rivera [6] and Montes-Charbonier joined Charbonier-Laureano's arguments for dismissal as to Counts Two and Three as they are both charged in said counts under aiding and abetting liability. *See* Docket Nos. 85 and 87. In particular, Montes-Charbonier alleges that "[a]side from the general contention that '[i]t was a purpose of the conspiracy for [the defendants] to enrich themselves. . .' there is no specific allegation (or evidence) that [he] retained or received any portion of the funds at issue." Docket No. 85 at 2. Montes-Rivera argues, however, that he was not an employee of the Puerto Rico House of Representatives during the relevant time period and in order to be liable he must have prior knowledge of the essential

---

[6] Codefendant Acevedo-Ceballos joined Montes-Rivera's arguments in seeking dismissal as to the same grounds. *See* Docket No. 89.

elements of the crime such that he can have the opportunity to alter the plan of, if unsuccessful, withdraw from the enterprise. *See* Docket No. 87 at 2.

It is further argued that a dismissal as to Counts One, Eleven and Twelve is warranted as these are money laundering counts which are based in § 666 violations. According to Montes-Rivera, "[t]he money laundering Counts (11, 12) alleged that the property involved in the financial transaction that is[,] the 'proceeds of some form of unlawful activity' stem from Acevedo's inflated salary (18 U.S.C.§666), so to the extent that these charges are contingent upon Counts Two and Three it is also requested that they be dismissed." Docket No. 87 at 3. Therefore, "to the extent these charges hinge on the validity of Counts Two and Three, they too should be dismissed." Docket No. 85 at 3.

Montes-Charbonier and Montes-Rivera's attempt to support their allegations by referencing *Rosemond v. United States*, 572 U.S. 65, 76 (2014), a gun offense case in which the Supreme Court sustained that "[a] person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate the offense's commission." Essentially, "the intent must go to the specific and entire crime charged . . ." *Id.* Accordingly, "the government must prove that an aider and abettor of criminal conduct participated with advance knowledge of the elements that constitute the charged offense." *United States v. Encarnacion-Ruiz*, 787 F.3d 581, 584 (1st Cir. 2015); *see Rosemond*, *supra.* Thereupon, the defendant "can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise." *Rosemond*, 572 U.S. at 78.

Notwithstanding, the Government deems Montes-Charbonier's contention insufficient as the *Indictment* contains specific allegations as to his involvement in the scheme and the purpose of the conspiracy as follows:

21. It was a purpose of the conspiracy for CHARBONIER, MONTES, MONTES-CHARBONIER, and ACEVEDO to enrich themselves by embezzling, stealing, obtaining by fraud, and without authority knowingly converting to their use, and intentionally misapplying, property and money that was owned by, or was under the care, custody, and control of the Commonwealth of Puerto Rico, that is, the fraudulently inflated portion of ACEVEDO's government salary.

22. It was further purpose of the conspiracy for CHARBONIER, MONTES, and MONTES-CHARBONIER to enrich themselves by exploiting CHARBONIER's official position as a legislator to obtain bribes and kickbacks from ACEVEDO in exchange for inflating ACEVEDO's government salary and to share in the proceeds of that inflated salary.

Docket No. 2, ¶¶ 21-22. The *Indictment* further alleges that [Charbonier-Laureano] "together with and aided and abetted by MONTES, MONTES-CHARBONIER . . . did corruptly solicit and demand for their own benefit and accept and agree to accept, things of value from defendant ACEVEDO, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions involving $5,000 or more, that is, ACEVEDO's inflated government salary." *Id.* at ¶ 56. The Court agrees.

As previously discussed, "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed.R.Crim.P. 7. As such, "[it] is generally sufficient that an indictment set[s] forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907, 41 L. Ed. 2d 590 (1974) (citing *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882)). Therefore, the Court can reasonably conclude that the *Indictment* complies with the specificity required as to allege that Montes-Charbonier

and Montes-Rivera were deeply involved in the retention or receiving of portions of the funds at issue.

Similarly, the Government rejects Montes-Charbonier's argument suggesting that he must personally benefit from fraud in order to be convicted pursuant to offenses under § 666 and honest services fraud under 18 U.S.C. § 1346. In support thereof, the Government brings forth case law which contradicts the Defendants' position. Namely, the East District of Virginia found that "[n]othing in the text of § 666 requires proof of a personal benefit to a defendant to sustain a conviction and there is no case law imposing such a broad limitation." *United States v. Spirito*, 2020 WL 3913470 at *4 (E.D. Va. July 10, 2020), Slip Copy. Likewise, the Third Circuit has found that "[t]o support a fraud conviction it is 'not necessary for the Government to demonstrate that [the defendant] personally benefitted from [the] scheme.'" *United States v. Riley*, 621 F.3d 312, 332 (3d Cir. 2010)(quoting *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987).

As to the dismissal of Counts Eleven and Twelve of the *Indictment* i.e., money laundering offenses in violation of 18 U.S.C. § 1956(a)(1)(B)(i), the Government is required to establish that the targeted financial transactions "involved the proceeds of specified unlawful activity." 18 U.S.C. § 1956.[7] Taking into account that the proceeds at issue herein derive from violations of § 666 and § 1346,[8] and considering that the Defendants based their request for dismissal solely

---

[7] (c)(7) the term "specified unlawful activity" means—
(B) with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving—
[. . .]
(iv) bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official. 18 U.S.C. § 1956(c)(7).
[8] For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

as to the § 666 offense, the money laundering counts as to additional services fraud pursuant to § 1346 must remain, even if the § 666 dismissal request is granted.

Finally, Montes-Charbonier's argues that his participation was limited to "two instances— in late 2019 and early 2020—in which Acevedo sent him $500 and he then passed that money to his father, who deposited it into a bank account he shared with Charbonier, and two occasions on which Charbonier asked Acevedo by text message to take an envelope to Gaby." Docket No. 85 at 1-2. However, the Court agrees that "[t]he government need not recite all of its evidence in the indictment, nor is it limited at trial to the overt acts listed in the indictment." *United States v. Innamorati*, 996 F.2d 456, 477 (1st Cir. 1993). Therefore, the arguments raised by Codefendants Montes-Charbonier and Montes-Rivera are unfounded and must also be **DENIED**.

## IV.    CONCLUSION

Charbonier-Laureano requested the Court to dismiss Counts Two and Three of the *Indictment* as said counts fail to state essential facts, including those necessary to meet the jurisdictional threshold. *See* Docket No. 81. Thereupon, Codefendants Montes-Charbonier and Montes-Rivera joined Charbonier-Laureano's request while also requesting dismissal as to Counts One, Eleven and Twelve of the *Indictment* due to a purported insufficiency. *See* Docket Nos. 83 and 85, respectively. Likewise, Codefendant Acevedo-Ceballos joined both Charbonier-Laureano's and Montes-Rivera's requests for dismissal. *See* Docket No. 89. Based on the foregoing, the Court concludes that there are sufficient allegations to support the charge that Charbonier-Laureano is an agent of the Commonwealth of Puerto Rico for purposes of § 666 pursuant to *Bravo-Fernández I*. In fact, the criminal conduct is not required to have any further connection to the federal funding to be met. *See Salinas*, 522 U.S. at 471. The Court also finds

that the *Indictment* properly specifies the elements of the offenses thereunder in order to allow the Defendants to prepare a defense should the case at bar proceed to trial. Regarding the bona fide salary exception, that is a question for the jury. *Dwyer*, 238 F. App'x at 647. As such, the Court will not intervene further.

For all the aforementioned reasons, the Court **DENIES** Codefendant, Charbonier-Laureano's *Motion to Dismiss Counts Two and Three (Section 666 Counts)* (Docket No. 81); Codefendant, Montes-Charbonier's *Motion to Dismiss Counts One, Eleven and Twelve* (Docket No. 85); Codefendant, Montes-Rivera's *Motion to Dismiss Counts One, Eleven and Twelve* (Docket No. 87); and Codefendant, Acevedo-Ceballos' *Motion Requesting Dismissal* (Docket No. 89). All *Motions for Joinder* are hereby **NOTED**. *See* Docket Nos. 85, 87 and 89.

Finally, as the Court deems this matter has been sufficiently briefed by the parties, a hearing is not warranted.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of September, 2021.


*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge